## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

KANDACE J. ex rel. her deceased husband
SEAN W.,[1]

      Plaintiff,

      v.                                          Civ. No. 21-782 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Kandace J. ("Plaintiff") brings this action on behalf of her husband, Sean W. ("claimant"), who is deceased. Plaintiff argues that the ALJ committed error when he denied the claimant's application for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff argues that the ALJ failed to consider relevant evidence that supported the claimant's subjective symptom allegations. The Court disagrees that this evidence was relevant enough that the ALJ committed reversible error in failing to discuss it. As a result, the Court DENIES Plaintiff's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum, Doc. 17, and affirms the decision below.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 4, 7, 8. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

## APPLICABLE LAW

A.    Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)    If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.    <u>Standard of Review</u>

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court "neither reweigh[s] the evidence nor

substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

The claimant filed a Title II application for disability insurance benefits on August 22, 2016. AR 172. He alleged an onset date of July 1, 2013. AR 18. His date last insured was September 30, 2015. AR 20. It is clear that the claimant became unable to work at some point between 2013 and June 25, 2021, when he passed away from dementia. Doc. 17 at 1; Doc. 17-1. But because a Title II application is at issue, Plaintiff must show that the claimant was unable to work prior to September 30, 2015.

No medical provider or expert has opined that the claimant was unable to work prior to that date, and the ALJ denied the application for benefits. Plaintiff appeals, arguing that the ALJ failed to consider relevant evidence in evaluating the effects of the claimant's dementia prior to 2015. Doc. 17 at 12-17.[4] The Court agrees that Plaintiff points to objective medical evidence that supports the claimant's subjective symptom allegations. The Court also agrees the ALJ did not discuss this evidence.

However, it is not reversible error because the ALJ is not required to discuss all the evidence in the file. The ALJ is required to discuss only evidence that is uncontroverted or significantly probative. In this case, an independent medical expert, Dr. David Huntley, reviewed this same evidence Plaintiff points to, and testified that it was only mildly limiting and that the claimant could still work. The ALJ did not err in adopting that opinion without specifically discussing all the same evidence that Dr. Huntley said was not relevant support for the claim of disability.

---

[4] In her opening brief, Plaintiff also argued errors at step five, contending that the ALJ was required to explain conflicts between the VE's testimony and the Dictionary of Occupational Titles, and that the ALJ should have conducted an analysis of the availability of jobs under *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992). In reply, Plaintiff conceded this argument. Doc. 24 at 5. Therefore, the Court will not address it.

A.    Legal Standard

Social Security Ruling ("SSR") 16-3p[5] instructs ALJs "to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." 2017 WL 5180304, at *2. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

The ALJs' assessments of subjective symptom complaints "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). While the Tenth Circuit has "insisted on objectively reasonable explanation over mere intuition," it has "not reduced [subjective symptom] evaluations to formulaic expressions." *Id.* at 909. The courts do not "'require a formalistic factor-by-factor recitation of the evidence.'" *Id.* (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). The ALJ need only "set[] forth the specific evidence he relies on in evaluating the claimant's" subjective symptom evidence. *Id.* "Findings as to [subjective symptom evidence] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).

_____

[5] SSR 16-3p is applicable for decisions made on or after March 28, 2016, and superseded SSR 96-7p. *See* 2017 WL 5180304, at *13 n.27. SSR 16-3p eliminated the use of the term "credibility," in order to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2. The instructions for evaluating subjective allegations in both rulings are the same, so case law interpreting SSR 96-7p remains relevant. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016); *Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017).

The ALJ may not ignore relevant evidence or mischaracterize the evidence. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010; *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (ALJ erred by "ignor[ing] evidence from [a clinical nurse specialist] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability"); *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987) (reversing where, among other things, ALJ erred by mischaracterizing the evaluation of a treating physician).

B.     Procedural Background

This application has undergone three hearings, an Appeals Council reversal, and two unfavorable ALJ decisions. ALJ Cole Gerstner's November 17, 2020 decision is the Commissioner's final decision for purposes of judicial review. At step one, ALJ Gerstner found that the claimant did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured. AR 20. At step two, the ALJ found the claimant had a severe impairment of mild cognitive disorder/dementia, among other things. *Id.* At step three, the ALJ found the impairments did not meet a listing. AR 21-23. At step four, the ALJ assigned an RFC for medium work with some modifications. AR 23. For nonexertional limitations:

> [The claimant] could do simple routine tasks only; judgment limited to simple work related decisions. Interactions with supervisors and coworkers could have been only occasional; never interaction with the public. Changes in the work setting would have been limited to simple work related decisions only. No tandem working with others. Work had to be in a quiet environment. The claimant had to work in isolation.

*Id.*

In hearing testimony,[6] the claimant testified that he sustained a brain injury after he fell off a ladder and hit his head on a brick surface in July 2012. AR 24. After that fall, he also experienced periods where he was missing moments in time. *Id.* He said that he did not really remember when things got worse after the fall. *Id.* Plaintiff, the claimant's wife, testified that the claimant's functional problems were not apparent immediately after the fall, but became apparent within a year. *Id.* The claimant has not been able to work because he is physically and cognitively limited, and his job was physically demanding and required a lot of math. *Id.* She testified that the claimant could not perform a simple job for a regular day with normal breaks because he could not perform more than two-step tasks. She said that he could memorize tasks but could not concentrate. *Id.* The claimant attempted to go back to work after the incident, but was having cognitive trouble, especially with mathematics and phone calls. *Id.* He had problems completing tasks. *Id.* As of September 2020, the claimant was in a rehabilitation facility due to complications from a more recent stroke. AR 25.

The ALJ discounted this testimony, finding that it was "not entirely consistent with the medical evidence and other evidence in the record." *Id.* Of note, the ALJ relied heavily on the 2019 hearing testimony of neurologist David Huntley, M.D., who examined the complete medical record and testified about the claimant's condition through September 30, 2015. AR 25; AR 83. Dr. Huntley testified that there has obviously been a decline in the claimant's functioning, and that he is probably disabled as of 2019. AR 25. However, the records pertaining to the period at issue indicate only a mild to moderate problem with memory retrieval, the

---

[6] The record shows that the claimant was not able to understand all the questions presented to him, and at the most recent hearing, a social worker at the assisted living facility had to answer questions on his behalf. Doc. 17 at 12; *see* AR 90-95, 101-02. Nonetheless, the Court recites his testimony to the extent it is favorable to his application for benefits.

equivalent of mild cognitive impairment. *Id.* Dr. Huntley stated that there is nothing in the record that is disabling, even while specifically acknowledging that the record shows small vessel dementia and that the claimant had suffered from inflammation from trauma, which became more pronounced over time. *Id.* Dr. Huntley opined that the claimant did not meet the criteria for dementia prior to the date last insured and did not have any motor impairments during the relevant period at issue. *Id.*

      C.    <u>Medical Evidence</u>

Plaintiff argues that the ALJ did not satisfy his duty to consider all of the medical evidence supporting the claimant's subjective symptom allegations. Doc. 17 at 15. The ALJ and Plaintiff discuss the medical evidence chronologically, and the Court will do so as well.

      1.    <u>July 2012 ER visit</u>

Th claimant presented to the emergency room ("ER") after his fall in July 2012. The ALJ stated that "Upon arrival, he was responsive, but had altered mental status." AR 25; *see* AR 560.[7] "The claimant was confused, but obeyed commands. He was pleasant and alert, but disoriented." AR 25; *see* AR 561. "A CT scan of the head showed large acute intraparenchymal hemorrhages and deep contusions . . . ." AR 25; *see* AR 562-63. "A consulting neurologist noted the day after admission that the claimant did not have headache, nausea, vomiting, numbness, tingling, or visual disturbance." AR 25; *see* AR 570-71. "The claimant was deemed stable with no apparent neurologic deficits." AR 25; *see* AR 578 (progress note by trauma/surgical, not by the consulting neurologist as the ALJ's discussion implies). The ALJ concluded that "These modest findings are not consistent with disabling symptoms or limitations." AR 25.

---

[7] The ALJ did not provide these pincites, but cited a range of 27 pages. Pinpoint citations are important for Plaintiff to challenge the decision, for the Commissioner to defend it, and for the Court to review it.

Plaintiff does not challenge the accuracy of what the ALJ said. Instead, she contends that the ALJ should also have considered that, before claimant was discharged, physical therapy evaluation notes stated that the claimant presented with "impaired insight and judgment," "exhibited delayed response," and "would require close supervision for safety" on discharge. Doc. 17 at 15; AR 583. "His overall cognitive status was impaired, he had loss of balance when distracted, and he had decreased awareness of need for assistance." AR 583. The Court agrees that these notes and observations are consistent with the claimant's allegations of symptoms, and that the hospital did not discharge the claimant on the basis that he did not have any continuing cognitive issues, as the ALJ's opinion implies.

### 2.   August 2013 ER visits

The claimant presented to the ER again after a temporary loss of consciousness in August 2013. AR 25. As the ALJ stated: "Examination was normal, with the claimant alert and fully oriented. Cranial nerves were grossly intact, strength and sensation were intact, and the claimant's gait was stable. His mood and affect were appropriate." AR 26; *see* AR 630. The physician determined he had experienced a seizure and was at risk for further seizures. AR 26; *see* AR 631-32. A few days later, the claimant returned to the emergency room. AR 26. He reported feeling dizzy and lightheaded upon waking. *Id.* The ALJ stated that "[a] CT scan of the brain was repeated and showed no evidence of pathology." AR 26; *see* AR 645.

Plaintiff argues that the ALJ should have considered that some test results were abnormal. Doc. 17 at 15. In the first August 2013 ER visit, the claimant had an "abnormal" electrocardiogram and the results of a head CT scan revealed diffuse atrophy, chronic periventricular white matter ischemic changes, and calcified atherosclerotic changes. AR 636-37. In the second August 2013 ER visit, a CT scan revealed chronic small vessel ischemia. AR 646. However, Plaintiff fails to note that the hospital providers themselves did not find any of this

concerning. One provider stated that the ECG and the CT results were "normal" at the first visit.
AR 631. Another stated that there was "no evidence of pathology" in the CT scan at the second
visit. AR 645. As described above, the ALJ simply echoed this language in this decision. AR 26.
Therefore, it does not appear that the ALJ's discussion of the August 2013 hospitalizations is
misleading in any way. Nonetheless, the Court agrees with Plaintiff that the CT findings provide
some objective support for his allegations of deteriorating cognitive function in 2013, even if it
was not advanced enough for medical providers to consider pathological.

3.     August 2014 ER visit

The claimant visited the ER in August 2014 with reports of a syncopal event that
occurred while he was smoking marijuana and fell into a wall. AR 26 (citing AR 693-98, 713-
17). Again, the ALJ stated that the "examination was normal." AR 26. It is not clear to which
examination the ALJ refers; there were several examinations performed during the claimant's
hospital stay with varying results. *E.g.*, AR 696, 697, 716. At any rate, Plaintiff argues that
another head CT scan taken that same day revealed "Intervally progressed changes of chronic
small-vessel ischemia now with bilateral basal ganglia lacunar infarcts present." Doc. 17 at 16;
*see* AR 651. The ALJ did not discuss this test result. Again, this does represent some evidence of
cognitive decline which the ALJ failed to consider.

4.     September 2014 progress notes

Plaintiff contends that the ALJ should have considered progress notes from September
2014, in which the provider evaluated the claimant with a slow gait, sluggish response times, and
impaired finger-to-nose testing. Doc. 17 at 16; AR 772. These findings again support Plaintiff's
subjective symptom allegations, but they are somewhat cumulative with other findings the ALJ
did discuss. AR 26 (in August 2014, the claimant "was oriented to person, place, and month, but

not the year. He was slow to respond to questions, but answered appropriately. Coordination and sensation were intact and affect and thought processes were normal.").

    5. <u>June 2015 progress notes</u>

  The ALJ stated that in June 2015, "the claimant reported that he was having some cognitive issues, and examination revealed some lapses in both recent and remote memory." AR 26. Plaintiff argues that the ALJ "discounted his cognitive complaints, and instead, focused on his physical examination," Doc. 17 at 16, but that is not a fair reading of the ALJ's opinion. The ALJ did accept these cognitive findings but found they were accounted for by the limitation to simple work, requiring little judgment or adaptation to changes. AR 26-27. Plaintiff does point out, however, that the mental status exam at this June 2015 appointment revealed poor insight in addition to abnormal memory, and that the provider diagnosed the claimant with "significant cognitive impairment." Doc. 17 at 16; *see* AR 768-69. The ALJ did not discuss this.

    D. <u>Analysis</u>

  The Court agrees with Plaintiff that there is some record evidence supporting Plaintiff's allegations of symptoms which the ALJ did not discuss: his July 2012 discharge from the hospital noting impaired insight and judgment and delayed response; ECG and CT scans in August 2013 and August 2014 revealing cognitive degeneration; September 2014 findings of a slow gait, sluggish response times, and impaired finger-to-nose testing; and June 2015 findings of poor insight in addition to abnormal memory and a diagnosis of significant cognitive impairment.

  However, the ALJ is not required to discuss every piece of evidence. *Clifton*, 79 F.3d at 1009-10. The ALJ must discuss the uncontroverted evidence he chooses not to rely upon and significantly probative evidence he rejects. *Id.* at 1010. Here, the Commissioner argues that the ALJ did not "misapprehended anything outcome-determinative." Doc. 21 at 15.

In particular, the Court is not persuaded that these undiscussed pieces of evidence are either "uncontroverted" or "significantly probative."  That is because Dr. Huntley reviewed this same evidence and testified live at the 2019 administrative hearing that the claimant was capable of performing simple work prior to the date last insured. Dr. Huntley specifically discussed the evidence establishing "mild to moderate memory retrieval," "small partial dementia," inflammation, and trauma—that is, the same evidence Plaintiff argues the ALJ should have discussed—and opined that it did not show disabling cognitive limitations. AR 84-85. Even given the evidence of some mental limitations, Dr. Huntley opined the claimant would be able to perform work in isolation at a steady, predictable pace. AR 86-87. On cross-examination by the claimant's attorney, Dr. Huntley testified: "He only has a problem with mild cognitive retrieval. If he's doing a simple, repetitive task, he's not going to be asked to change his cognitive retrieval." AR 89.

In other words, Dr. Huntley examined all the evidence that Plaintiff highlights, and he testified, subject to cross-examination, that it does not show disabling cognitive limitations. The Plaintiff does not argue that the ALJ erred by accepting this testimony. The Court finds there was no duty to discuss evidence that Dr. Huntley testified was not significantly probative of disability.

### CONCLUSION

For the reasons stated above, the Court denies Plaintiff's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum, Doc. 17.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**